We'll start with 22-4019, U.S. v. Faunce. Ms. Stengel, you're ready to go. May it please the Court. Counsel for the United States, Jessica Stengel appearing on behalf of Ivan Faunce. It has been 50 years since the Supreme Court articulated the minimum procedural requirements necessary to protect due process rights afforded to people on supervised release. It has been more than 20 years since those minimum procedural protections were codified in Federal Rule of Criminal Procedure 32.1. This case involves two reversible legal errors, both stemming from the District Court's failure to apply those minimum procedural protections. I will begin with the error of greater consequence, if it's all right with the Court. And that is the District Court committed reversible error when it decided to excuse the adverse witness from appearing in court at the hearing without first applying the balancing test. So Rule 32.1 says a person on supervised release, after they have been charged with violations, at that person's choosing, is entitled to a hearing. And at the hearing, the defendant can present evidence, can call witnesses on his or her own behalf, and also has the right to question adverse witnesses against them at the hearing unless the District Court determines that in the interest of justice, that adverse witness's presence may be excused. But as I understand your argument, it's not predicated on Rule 32.1. It's predicated on the right to due process. Is that correct? Correct. And Rule 32.1 simply codifies those due process rights that the Supreme Court had articulated first in Morrissey in the context of parole, but then subsequently reaffirmed in Scarpa. So because this is a due process situation and not trial where we have Sixth Amendment confrontation rights at issue, the due process right to confrontation can be modified. However, it's clear, based on this court's adoption of the balancing test in United States v. Jones in 2016, that before anything can happen to affect that right, that in-person, in-court confrontation right, the District Court has to make a balancing. And the court did not do that here, probably because it could not, and there is no way to say that this was not errored. Since it's a, if the District Court failed to conduct a balancing test, and if that's required under the Fourteenth Amendment or the Fifth Amendment, under de novo review, can't we conduct the balancing test in the first instance and conclude that ultimately there was no violation of the due process clause, even if the District Court had failed to comply, say, with the strictures of 32.1 or with Jones? This court may be able to do that were the record sufficiently developed. Now, in order to do so in this particular case, it would have to put substantial daylight between what happened in Jones and the facts of this case, as they are basically identical. And in addition, I would say, should this court do it, it would further, it would seem to undercut the notion of a District Court being required to do something on the record. And the court, I think in Henry, said that it was not enough just to cite this interest of justice language by the District Court. There needs to be a substantive balancing here. And to do so would be to allow the District Court to engage in basically magic words and have this court do the heavy lifting. So, getting back. Counsel, let me ask a question, please, because I know that there's a disagreement between you and the government, counsel, as to what our review is, whether or not it's de novo or whether it's plain error. I've been looking at that, and did you show me exactly the language that you were claiming for your objection on the low to the court's handling of that proceeding? I believe, Your Honor, it's in Record Volume 1 of the Record on Appeal, where the defendant submitted briefing specifically objecting to Banta, the adverse witness, appearing by Zoom, and specifically pointing out to the court that before such an excuse can be made, the District Court has to engage in the balancing test. All right. I saw that, but I'll ask the government then, is it still their position that it's a plain error review rather than de novo review? Thank you, Counsel. Can I ask you, back on Jones, is it significant that in Jones the witness to be cross-examined was not present and E.B. was present, albeit virtually? No, there is no distinction, because the presence requirement in 32.1 is that the adverse witness show up in court for the very purpose of cross-examination. Now, Zoom is an alternative to being present in court. It is not the equivalent, and so before the court could have decided that Zoom was an acceptable alternative to still honor Mr. Fonce's confrontation right, it needed to engage in the balancing test. Therein lies the rub. We're not talking about the right of confrontation. We're talking about the right to due process. Doesn't that make a difference? If Rule 32.1 was intended to codify the right of confrontation, we're not dealing with the right of confrontation. We're dealing with the right of due process, because this is a revocation proceeding. It is, and the Supreme Court noted that in revocation proceedings, because someone's liberty interest is at stake, they do have the due process right to confrontation. It is arguably diminished. It is somewhat attenuated from the Sixth Amendment right to confrontation. However, it is still a right to confrontation so that the defendant can test the person who is making allegations against them, and we do not support sending someone to, I think, it was an ill-considered revocation, to use the words of the Supreme Court. This needs to be tried and tested, and it, quite frankly, it honors the entire criminal process. So, the district court may have been able to conclude that Zoom was an acceptable alternative to appearing. However, it needed to engage in that balancing test, and it failed to do so, and we cannot say, based on the record in front of us and based on Jones, that the error was harmless. What was the technology available in Jones? They didn't have Zoom. People had been using Zoom for two years to interview employees. This judge had obviously conducted revocation hearings for some time with Zoom, because this was, I guess, the first revocation hearing that was conducted after the court decided to have in-person hearings. Isn't that really important that we have a technology here that does, that the whole country was getting used to instead of having personal contact? It is important because it creates, it gives us another alternative should the district court find that in the interest of justice, after engaging in that balancing test, that it is okay to excuse the witness from physically appearing. It is simply an alternative. It's one of those creative solutions the Supreme Court mentioned 50 years ago. But doesn't it also reduce, in the balancing, yeah, there's a little advantage to having the person in, present in person to be questioned, and that tips it a little bit. You don't need as much on the other side to counteract that and say, we don't need to have the person present. I mean, that's part of the culture, the background of all this going on. And for the judge to just say, look, we're doing this without much notice. This person apparently was out of town. I'm not sure that that's clear on the record. But if so, there's a problem of getting babysitters, space for this person, and so on, that was mentioned. Your Honor, I'm going to respectfully disagree. Zoom is an alternative that we get to talk about only after the district court makes the balancing, and it does not affect the balancing. The balancing strictly looks at the defendant's interest in confrontation and weighs it against the government's showing of good cause to excuse the witness from physically appearing. You don't think the fact that it is very close to face-to-face confrontation has anything to do with the balancing? No. That equation comes into the district court looking at the reliability option of the alternatives. That doesn't sound like a due process sort of weighing that I'm familiar with. I would think that that has a lot to do in the balancing. Don't you have authority that we don't consider whether the alternative to face-to-face is a close second, that we can't consider that in determining the balancing? You consider that when you determine the reliability of the alternatives to the face-to-face confrontation, which do not enter the equation until the district court weighs the defendant's good, great interest in confrontation. And in this case, it's directly on point with the defendant's interest in confrontation that this circuit noted in Jones were incredibly strong against the government's limited showing of good cause. Again, using language from this circuit in Jones. And arguably, the good cause in Jones was stronger than the good cause here. So you're saying the balancing would be identical if the alleged victim in this case simply couldn't appear. The balancing would be the same. That would be a burden upon the government to establish why the victim simply could not physically appear in court. The government in this case failed to do so. So your answer is yes. In terms of the balancing, the balancing process would be identical whether the victim would appear by Zoom, by telephone, or wouldn't appear at all. No, Your Honor. And I misunderstood. We are ships passing in the night. The balancing test does not look at the alternatives to physical appearance. Right. So in weighing and balancing, the balancing test would be performed identically in those three alternative processes. No, because those alternatives are options we get to after conducting the balancing test. Well, that's the point. You see, as I'm understanding you, the balancing is conducted before you consider whether the person can come, can appear by Zoom or not. What do you look at in the balancing? You said we can't consider in the balancing whether the Zoom appearance is close to in person. So I assume from that that when you conduct the balancing, in your view, due process doesn't let you consider the difference between whether the victim appears by Zoom, by telephone, or doesn't appear at all. That is correct. That is correct. That does not sound like due process. The balancing looks at the government's reasons for the witness not appearing in court. In this case. Okay. Sorry. That's all they look at is the reasons. Correct. It is not a tricky test. So the balance. No, go ahead. I just wanted to interject one follow-up question. So I assume from your answer then the balancing test would not take into account anything that transpires during the actual proceeding. In other words, so her EB's alleged estreporous conduct, that would not enter into the equation because that has taken place after the decision had already been made. Correct. All right. Her conduct goes to harmlessness. So a judge could not do the following. The judge couldn't say, well, I think Zoom will work fine. Let's try it. And if I think it's important in making my judgments in this case to see the victim up close and personal and giving the defendant an opportunity to be present with the victim, then we can switch. Then I can recess the hearing and have the witness come in person. The judge couldn't do that. Correct. Your Honor, absolutely correct. I have a minute and 40 seconds. I would like to reserve the remainder of my time for rebuttal. May it please the court, counsel, Nathan Jack of the United States. I'll pick up on this second issue that was discussed. This court should affirm for three reasons. First, the district court applied the correct due process test. Second, even if it was required to apply the Jones balancing test, that's satisfied here. And third, because the court expressly discounted the victim's videoconference testimony, any error in its mission was harmless. And I'll take those in order. Counsel? Counsel? Yes. Before you swing into your argument, I want to hear, are you still arguing that the review is by plain error rather than de novo? So the second issue is de novo. The plain error went to the first argument, the notice argument that they raised for the person. Go ahead. So what defense is asking for is that the district court should have applied a balancing test. And that is precisely what the district court did. The district court considered the difference between in-person testimony versus videoconference testimony and found that that difference was negligible. That in the district court's own experience, it's able to make credibility determinations just as well through videoconference testimony as in-person testimony. It also considered the importance of that testimony to the government's case and found that the victim's testimony wasn't the linchpin of the case, which indeed it wasn't. So E.B.'s testimony really was pretty insignificant for the judge's determination that she had been kidnapped? It was, Your Honor. Again, that was all in the medical records. The nurse's testimony all went to that effect, not just the assault but also the kidnapping as well. And what about the determination that he had committed criminal mischief? That was all predicated on E.B.'s testimony. It was not on E.B.'s testimony. Again, the only times the judge credited E.B.'s testimony was when it was corroborated by other evidence. And, again, we have the pictures of the broken windshield. We have the pictures of the defendant's elbows that he broke. We have the contemporary misstatements made at the hospital to that effect. And criminal mischief itself didn't matter to Mr. Founce's sentence, again, because he was sentenced on the two grade-A violations, the assault and the kidnapping. Well, how do you deal with your adversary's argument that Judge Gorsuch's opinion in Henry makes it impossible to disaggregate the impact of the judge's alleged error in finding criminal mischief along with these other more serious crimes? Henry was a different case. There were only two violations there that were essentially equivalent, both dealing with the bar fight. Here we have seven different violations, two which were much more serious than the five other grade-C violations. And the court was pretty clear that it was discounting, essentially, the grade-C violations in its sentencing. Again, when the prosecutor was discussing one of the grade-C violations, the dangerous weapon, the district court essentially cut off the prosecutor and said, listen, I get it, but we have all these other grade-C violations, so why are we really worried about this here? So because the district court expressly discounted those minor violations and really emphasized the grade-A violations, it's pretty clear that the sentence would have been the same. And again, the district court stated many times during the hearing, I wish I could sentence you for longer. But I thought Judge Gorsuch's entire point was, whether you're dealing with seven acts or two assaults or three assaults, when a judge says, because of the sum of these six, seven, two violations, it's impossible for us as an appellate court to untangle the quantification that each of those individual acts contributed to the judge's finding. I think we may have lost Judge Balduck. He's still there. OK. Oh, really? Yeah. OK. Should I wait? Yeah, wait. Stop the clock. Yes. Oh, there he is. We lost your picture for a moment, Judge Balduck. I don't know if you lost us. I'm with you all the way. OK. So to answer your question, so again, that's true in the absence of any evidence from the district court. The district court would act differently. But again, we have evidence from the district court that Mr. Founts was sentenced on the two grade-A violations, that the numerous other grade-C violations didn't matter in the sentence. Now, I don't want to quarrel with you, but I thought that the judge said it didn't affect the guideline range, not that it didn't affect the sentence. It did say it didn't affect the guideline range. But the way it treated those violations, again, interrupting the prosecutor when talking about one of the grade-C violations says, I get it. Listen, this doesn't matter. The multiple statements that I sentence you to the statutory maximum, I wish I could sentence you for longer, again, shows the sentence would have been the same. But more to the point, the district court did apply the proper due process test here and again. The way you described it, though, you said the judge, in applying what you call the proper test, said, I've done a lot of these on Zoom. I can judge credibility that way. Opposing counsel said that's not a proper consideration in the balancing. The balancing test applies only to whether you can excuse the witness from being there live. She didn't cite authority specifically on that. Do you have any authority supporting your view? I do. I mean, if we look at Jones and Henry, those cases were specifically about hearsay evidence, where the witness was not available for questioning in any format. And the rules don't specifically say that they require the witness to be in person. It just says the opportunity to question any adverse witness. That's what the rule says. And so the due process balancing that the court engaged in here showed that that video conference testimony satisfied that opportunity to question the witness. So, again, what... Have there been any cases that address that specific issue of how reliable the alternative to in-presence testimony is? How reliable, how easy it is to cross-examine, to assess credibility, things like that? Do you have any authority, one way or the other, on whether that's an appropriate consideration in doing the due process balance? Yes, again. And, you know, I think we need to take a step back here and consider there are kind of two things going on here. First is the opportunity to question any adverse witness. And that falls under the more generic due process test. Due process is very flexible. The court in Morrissey has repeatedly identified, listen, this is flexible. We're not trying to create these inflexible regimes. We want creative solutions. And so this type of balancing where you can consider the difference between in-person testimony versus video conference testimony, the weight of that testimony and the burden in getting that testimony, that falls under due process balancing. Now, when you are trying to admit hearsay evidence without the opportunity to admit or without the opportunity to question, that's when that Jones balancing test comes into play. Again, Jones and Henry were both about hearsay evidence. And what defense is trying to do is to shoehorn that specific tailored balancing test into the more generic due process balancing test that should maintain its flexibility. And this court should reject that invitation and should maintain the flexibility that due process has. Well, in the balancing, what was the weight of the reasons for not having her testify? There was no real evidence that she would need babysitting. Was there? Would need babysitters. What was on the record before the court regarding the difficulty in having her come? There was on the record that she would need travel arrangements. She would need lodging. And she has three young children and would need child care. And again, this all needed. You say that was on the record in what form? In the briefing, I believe, and in the district court's ruling. In its written ruling. The district court said that, but I didn't see where there was any evidence before the court regarding that. Now, I believe it was. When the prosecutor argued against her having to come, it seemed like the prosecutor was focusing on the fact that the witness was afraid of the defendant. Which, of course, probably could be raised any time you have a victim. And I don't think we want to always excuse victims from having to testify in person. I don't have the specific record, but it is a finding that the court made that these arrangements would need to be made. And that those practical difficulties of arranging that over the course of the weekend gave the court good cause to excuse the evidence. And there was evidence in the record to support the judge's saying that? Yes, Your Honor. And I, unfortunately, don't have that before me. How much time had passed between the filing of the motion and the hearing? It all happened within the course of a week, essentially. Yeah. Isn't that significant? You know, if I'm looking for a babysitter on Friday at 5 o'clock, I'm probably going to have trouble finding a babysitter. If I had a week to find a babysitter, I'm probably going to have zero trouble. So isn't the fact that the timing of the hearing late on a Friday before a Monday hearing, isn't that the explanation for the babysitting issue? Exactly. It was many practical difficulties in arranging that. And the district court specifically noted in the footnote of its ruling that the government could have attempted to make those arrangements any earlier. That was the earliest that could have happened. And so trying to do that over the course of the weekend was a burden. I'm sorry, I did not understand that. How in the world would it be the inability of the government to procure babysitting a week before if that was the reason for the logistical difficulty in EB appearing? Why would the government have to wait until Friday if the motion had been filed a week earlier? The motion wasn't – so whether or not EB would need to be in person was not decided the week before. Again, the week before is when the notice came out. So it was not a full – That was a notice by the court that there would be an in-person hearing, no longer a Zoom hearing. No, what the notice was is that the court was opening up its COVID protocols. And so the defendant then requested an in-person hearing. The hearing had been set before the notice? Yes, it had been set for Zoom. So then the court says we're going to open up the COVID protocols. And how long after that did the defendant request an in-person hearing? It was fairly soon after that. But then the court heard briefing on this issue and then held the hearing on the Friday before the hearing was to take place on Monday. And again, this is a district court's factual finding. Let me just read it for you in footnote one. And the government could not have made arrangements for in-person testimony at an earlier date. That is a factual finding that the district court made. Well, it's got to be supported by evidence. And what Judge Bacharach is inquiring about is if the government was on notice on Tuesday that the defendant wanted a hearing, that's almost a week to find a babysitter, which is very different from having to find a babysitter when the issue arises on Friday afternoon. Sir, can you help us on what the sequence of events was? I don't have those specific dates before me on when the briefing was filed. I do have this on here. And so it would be reviewed for clear error on whether that factual finding was clearly erroneous. But do we know how far away? I don't know if we know the specific location, again, because the victim was very afraid of disclosing that location. We know that she was outside the locale. Well, we know. OK. We don't know the specific location. We don't know if she was in a different state or anything like that. Correct. Because I think the judge said something about finding transportation for her also. Transportation and lodging and child care. So, again, that's one part of the equation. The other part is the difference between in-person testimony and videoconference testimony. And I think it's telling that the defendant really hasn't identified what interest he actually has in in-person testimony versus videoconference testimony. In his opening brief, he cited some type of dignitary interest that, again, considered the outburst that the victim had at the trial, which he now, the defense counsel now acknowledges, isn't part of the consideration. The court can't consider it. And so it's unclear. He hasn't really identified what interest he has in in-person testimony versus videoconference testimony. I thought it was standard thinking that someone is less likely to accuse someone else of misconduct if you're facing the person at the time, as opposed to being on a video or hearsay or whatever. Isn't that a very important interest? Well, if it's for effective cross-examination. I mean, this cross-examination was a dream come true. This goes beyond cross-examination. Cross-examination isn't the only interest satisfied by confrontation. The Supreme Court has been clear on that. Part of it is requiring the accuser to face the accused and give the testimony facing the accused. That's a psychological thing. I have no idea how powerful it is, but that's the tradition. Yes, and I see my time's up. I'll just briefly answer that. And again, the district court found that videoconference testimony is a good approximation. You still are able to see the defendant there. And again, this cross-examination was a dream come true. You couldn't have hoped for any type of better cross-examination than what happened here, of not only asking all the questions, but really undermining the credibility of it and to the point where the district court reduced the value to zero. So I ask this court to affirm. Thank you. Counsel, you have a minute. Just to address a few points that came up in the course of talking with my learned friend. First of all, the authority for this is Rule 32.1, which says very specifically the person on supervised release who's at the hearing is to be granted the opportunity to appear in person, to present evidence, to question adverse witnesses unless the court determines that in the interest of justice, that the interest of justice does not require the witness to appear. That's the authority for the starting place where we look at in-person testimony. Secondly, in terms of timing of all of this, based on my reading of the record, defense filed a motion objecting to Zoom testimony on February 10th of 2022. The hearing was not held until February 24th of 2022. Sorry, it was raised on what date? February what? 10th. 10th or 11th. So that's two weeks before the hearing? Two weeks before the hearing. And quite frankly, court hearings are never convenient for anybody, whether it's the accuser, the accused. Well, usually the accused doesn't have anywhere to go, but the accuser, counsel, it's an inconvenience, and we all accommodate to ensure that justice is done. Likewise, so the defendant did identify reasons, and very clear reasons, and reasons that this court has previously held to be quite compelling in terms of the need for cross-examination. And Jones is our framework. There is no reason to break new ground here. Jones does the heavy lift for us. And I see that my time is out, so rather than go on, I will respectfully request this court vacate the order revoking his revocation and remand for further proceedings. Thank you. Thank you, counsel. The case is submitted. And counsel are excused. I don't see you on any other cases.